<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSE MAURICIO PEREZ SIERRA,<br><br>*Petitioner*,<br><br>v.<br><br>PAMELA BONDI, *et al.*<br><br>*Respondents*. | Civil Action No. 25-cv-18829<br><br>**OPINION**<br><br>February  23 , 2026 |

**THIS MATTER** comes before the Court on the Petition for a Writ of Habeas Corpus filed by Petitioner Jose Mauricio Perez Sierra pursuant to 28 U.S.C. § 2241, challenging the legality of his immigration detention. (ECF No. 1.) Respondents submitted a letter brief with supporting documentation addressing the fundamental fairness of Petitioner's bond hearing. (ECF No. 9.) Petitioner filed a response. (ECF No. 10.) After review of the parties' submissions and the bond-hearing record, the Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons set forth below, the Petition will be denied in part and granted in limited part.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Jose Mauricio Perez Sierra filed this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 on December 19, 2025, accompanied by supporting exhibits and the filing fee. (ECF Nos. 1–2.) According to the Petition, Perez Sierra is a thirty-one-year-old citizen of Colombia who entered the United States on September 13, 2022 and was paroled the following day. (ECF No. 1 ¶¶ 1, 19.) Petitioner thereafter established residence in Toms River, New Jersey where he worked

and maintained a clean criminal record. (*Id.* ¶¶ 1.) Petitioner consistently complied with the requirements of the government's Alternatives-to-Detention program. (*Id.* ¶¶ 1, 20.)

Petitioner alleges that ICE detained him on September 13, 2025 pursuant to § 1225, and transferred him initially to the Elizabeth Contract Detention Center. (*Id.* ¶ 2, 22.)

On October 9, 2025, Immigration Judge Nina M. Carbone ("Judge Carbone") denied Petitioner's custody-redetermination request, relying on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) and thus concluding that the Immigration Court lacked jurisdiction to consider Petitioner's release on bond.[1] (ECF No. 1 ¶ 23; ECF No. 2, Ex. D.) The Petition chronicles a series of interstate transfers that have allegedly impeded his access to counsel and to the courts: on October 10, 2025, a transfer to Aurora, Colorado; on December 8, 2025, two same-day movements to Florence, Arizona, then Natchez, Mississippi; on December 12, 2025, a transfer to Los Fresnos, Texas; as well as additional transfers that left Petitioner's precise location unknown. (*Id.* ¶¶ 3–5, 24–28.) Counsel for Petitioner attempted to contact the ICE office via phone and email to no avail. (*Id.* ¶ 30.)

Petitioner argues that his continued detention—after an extended period in the community on parole and after repeated interstate transfers—has become constitutionally suspect. (*Id.* ¶ 31.)

On December 22, 2025, the case was assigned to the undersigned. By Text Order dated January 7, 2026, the Court addressed the statutory basis for Petitioner's detention and, relying on

---

[1] In *Matter of Yajure Hurtado*, the BIA adopted a novel interpretation of § 1225, concluding that a noncitizen may be deemed to be "seeking admission" under § 1225(b)(2) notwithstanding prior residence within the United States. *See* 29 I&N Dec. 216 (2025). However, the Court declines to defer to that interpretation where the statutory text is unambiguous. *See Singh v. Bowen*, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *5-6 (C.D. Cal. Nov. 21, 2025) (reasoning that deference is not required where the statute is unambiguous).

this District's recent § 1225 decisions[2], concluded that Petitioner is properly subject to detention under 8 U.S.C. § 1226(a). (ECF No. 3.) Therefore, the Court ordered Respondents to provide Petitioner with an individualized bond hearing before an Immigration Judge no later than January 13, 2026, and to file a notice with the Court indicating the outcome within three days of that hearing. (*Id.*)

Consistent with that directive, Judge Carbone conducted a custody redetermination on January 14, 2026. (ECF No. 9-1.) Respondents notified the Court of Judge Carbone's written decision by letter dated January 15, 2026, attaching Judge Carbone's order denying bond. (ECF No. 5.) On January 22, 2026, the Court ordered Respondents to submit briefing, with supporting documentation from the bond proceedings, addressing whether the hearing comported with the requirements of fundamental fairness and due process, including the allocation of the burden of proof. (ECF No. 6.)

Respondents requested a short extension of that deadline (ECF No. 7), and the Court granted the request, extending the briefing deadline to February 3, 2026. (ECF No. 8.) On February 3, 2026, Respondents filed a letter submission arguing that the Court lacks jurisdiction to reweigh Judge Carbone's discretionary bond determination and contending that the January 14 proceeding satisfied the baseline requirements of fairness; Respondents' filing appended the January 14 transcript as Exhibit A. (ECF No. 9; ECF No. 9-1.)

---

[2] Under this Court's recent decisions in *Rivera Zumba v. Bondi*, No. 25-14626 (KSH), 2025 WL 2753496 (D.N.J. Sept. 26, 2025) (interpreting § 1225(b)(2)), *Rivas Rodriguez v. Rokosky*, No. 25-17419 (CPO), 2025 WL 3485628 (D.N.J. Dec. 3, 2025) (interpreting § 1225(b)(1)), and other recent decisions in this District interpreting § 1225, the Court holds that Petitioner is subject to detention under § 1226(a) because he was apprehended in the interior of the United States after a period of residence and is not properly classified as an "arriving alien" or otherwise "seeking admission" within the meaning of § 1225(b).

3

Petitioner filed a reply on February 6, 2026, arguing that the January 14, 2026 bond hearing was fundamentally unfair because Judge Carbone failed to provide an individualized assessment of flight risk and offered no substantive reasoning on the record. (ECF No. 10.) Petitioner maintains that due process requires a meaningful, individualized determination, and therefore renews his request for immediate release. (*See id.*)

II. **LEGAL STANDARD**

A. **Habeas Jurisdiction**

Under 28 U.S.C. § 2241, federal district courts retain jurisdiction to review the legality of executive detention, including immigration custody. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003). A district court may grant habeas relief if the petitioner "is in custody in violation of the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Jurisdiction lies in the district of initial custody and is unaffected by subsequent transfers. *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 445–446 (3d Cir. 2021); *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

B. **Statutory Detention Authority**

The Immigration and Nationality Act provides two principal sources of prefinal removal order detention authority. First, § 1225(b) mandates detention of certain "applicants for admission" – persons seeking entry who have not been formally admitted. Such individuals are subject to mandatory detention during inspection and removal processing. Second, § 1226(a) authorizes—but does not require—detention of noncitizens already "present in the United States," subject to discretionary bond proceedings.

The distinction between § 1225(b) and § 1226(a) is critical. Under § 1225(b), detention is mandatory and typically brief. Under § 1226(a), detention is discretionary and constitutionally

constrained by due process. Detention under § 1226(a) attaches where DHS encounters a noncitizen within the interior after admission or after a substantial period of continuous presence, whereas § 1225(b) applies only where the individual is encountered "seeking admission" at the border or its functional equivalents. *Jennings v. Rodriguez*, 583 U.S. 281, 297–298 (2018); *Zumba v. Bondi*, No. 25-CV-14626 (KSH), 2025 WL 2753496 (D.N.J. Sept. 26, 2025) (distinguishing detention of "arriving aliens" under § 1225(b) from detention of persons apprehended in the interior whose presence in the United States was a settled and ongoing fact).

### C. Bond Hearings – Due Process and Fundamental Fairness

At the same time, Congress has limited judicial review over certain discretionary detention determinations. Under 8 U.S.C. § 1226(e), "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."

The Third Circuit has recognized that habeas jurisdiction remains available to ensure that a bond hearing comports with the requirements of due process and fundamental fairness. *See Ghanem v. Warden Essex Cnty. Corr. Facility*, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022). A fundamentally fair bond proceeding generally requires that the noncitizen receive factfinding based on a record disclosed to him, a meaningful opportunity to present evidence and argument, and an individualized determination by the decisionmaker. *Id*. Courts, however, may not review discretionary evidentiary determinations, credibility findings, or the ultimate weighing of the evidence. *Id*. at *2–3.

### III. DISCUSSION

#### A. January 14, 2026 Bond Hearing

The Court has reviewed the transcript of the January 14, 2026 custody redetermination and finds that the proceeding afforded Petitioner the core procedural protections recognized in this Circuit. (ECF No. 9-1.) This Court lacks jurisdiction to review any discretionary determinations underlying an immigration judge's bond decision, but it can review whether the bond hearing was fundamentally unfair in violation of this Court's order. *See Ghanem*, 2022 WL 574624, at *2–3 (observing that § 1226(e) bars review of discretionary evidentiary determinations and that mere disagreement with credibility findings does not state a constitutional claim); *see also Jarbough v. Attorney General*, 483 F.3d 184, 189 (3d Cir. 2007) (recasting factual or discretionary challenges as due-process claims does not confer jurisdiction to reexamine credibility determinations).

In a fundamentally fair bond hearing, due process has three essential elements. The noncitizen "(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his interests." *Ghanem*, 2022 WL 574624, at *2.

At the January 14, 2026 bond redetermination hearing, Judge Carbone invited both parties to present testimony. (ECF No. 9-1 at 5 ¶¶ 5–6; 6 ¶¶ 24–25.) Petitioner, through counsel, proffered that Petitioner is employed as a technician installing advanced medical devices, travels for work as part of a team, receives strong employer support, maintains significant church and community ties, and earns stable income. (*Id.* at 8 ¶¶ 23–25 to 9 ¶¶ 1–8.) Counsel further requested the opportunity to address alleged violations of the Alternatives to Detention ("ATD") program referenced in agency records, asserting that the alleged violations were inaccurately characterized and attributable to Petitioner's work-related travel and technical issues that were promptly resolved

with supervising officers. (*Id.*) Documentary evidence, including employment-related materials, was submitted in support of release. (*Id.*)

Petitioner's counsel also argued that the existence of a removal order should not weigh against bond because the underlying merits proceedings were, in counsel's view, procedurally deficient. (*Id.* at 8 ¶¶ 8–14.) Specifically, counsel represented that the merits hearing had been rushed following a change of counsel, that additional time to develop the record had been requested and denied, and that Respondent did not receive a meaningful opportunity to present his case. (*Id.* ¶¶ 8–10.) On that basis, counsel contended that the removal order should not be treated as indicative of flight risk. (*Id.* 13–14.)

The Government opposed release, emphasizing that Respondent's applications for asylum and protection under the Convention Against Torture had been denied and asserting that, if the removal order were finalized on appeal, there would be a serious concern that Respondent would fail to appear. (*Id.* at 7 ¶¶ 2–24.)

Judge Carbone acknowledged the parties' respective positions, accepted for purposes of the record that the alleged ATD violations were disputed and explained, and indicated that a written decision would issue later that day. (*Id.* at 9 ¶¶ 11–17; 11 ¶¶ 11–12.) Appeal was reserved on behalf of both parties and the hearing was adjourned. (*Id.* ¶¶ 12–15.)

Ultimately, Judge Carbone denied bond, determining that Petitioner "did not establish [that] he would not be a flight risk if released from custody" under *Matter of R-A-V-P*, 27 I&N Dec. 803 (BIA 2020) (upholding the Immigration Judge's denial of custody redetermination upon finding respondent presented a flight risk despite pending asylum claim, in light of his lack of employment, familial, or community ties and absence of any realistic avenue to lawful status).

This Court expresses no view as to the correctness of Judge Carbone's ultimate determination, but the record compels a finding that Petitioner received a fundamentally fair bond hearing as ordered by this Court. Any challenge to the discretionary decision of Judge Carbone must be presented to the Board of Immigration Appeals.

### B. Reasonableness of Continued Detention and Timing of Relief

Even where a bond hearing has been held, federal courts retain an independent constitutional duty to determine whether detention has become unreasonably prolonged. The Third Circuit has read a reasonableness limitation into the statutory detention authority: detention is authorized only for a period reasonably necessary to serve the statute's regulatory objectives, and once detention becomes unreasonably prolonged the Government must justify continued custody with an individualized showing of necessity. *See Diop v. ICE/Homeland Security*, 656 F.3d 221, 232–34 (3d Cir. 2011) (reading a "reasonableness" limitation into INA detention authority and requiring government justification after prolonged custody); *see also Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 474–75 (3d Cir. 2015) (reasonableness inquiry is fact-specific and "a function of the length of the detention"); *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 223–24 (3d Cir. 2018) (recognizing that prolonged detention may trigger heightened constitutional scrutiny). These decisions instruct courts to assess the totality of circumstances—length of detention, likelihood of removal in the reasonably foreseeable future, who is responsible for delay, and whether conditions resemble penal incarceration—rather than applying rigid temporal rules. *See Diop*, 656 F.3d at 234.

The Supreme Court's precedents supply practical yardsticks that inform this analysis: *Demore* upheld mandatory pre-removal detention in the context of an expectation of relatively brief custody, and *Zadvydas* identified a six-month post-removal presumption after which the

Government must justify continued custody as reasonably necessary. *See Demore v. Kim*, 538 U.S. 510, 529–30 (2003) (upholding mandatory detention in light of an evidentiary record that most detentions would be brief); *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (recognizing a six-month presumption and requiring justification for continued post-removal detention). Consistent with those decisions and this Circuit's case law, district courts within the Third Circuit routinely treat detention that moves well beyond the "brief" periods contemplated in *Demore*—or that approaches or exceeds multi-month benchmarks without a reasonably foreseeable removal date—as warranting closer constitutional scrutiny and, where appropriate, additional procedural protections. *See, e.g., Ghanem*, 2022 WL 574624, at *4 (noting that detention well beyond six-months warrants careful review under Third Circuit precedent).

Applying these principles to the record before the Court, Petitioner's allegations of prolonged custody following his September 2025 arrest, repeated interstate transfers, lack of notice regarding custodial location (ECF No. 1 ¶¶ 2–6) and the present record concerning the foreseeability of removal bear directly on the *Diop* factors. If detention continues to extend materially without removal or without demonstrable, individualized Government justification—particularly where removal is not reasonably foreseeable—the balance that *Diop* and its progeny identify tips in favor of relief.

Civil immigration detention is regulatory, not punitive, and must remain tethered to its legitimate purposes of ensuring appearance at proceedings and protecting the community. On the present record, the Government has not made the individualized evidentiary showing necessary to justify continued civil detention under the Due Process Clause.

Accordingly, the Court will deny the Petition to the extent it challenges the fundamental fairness of the January 14, 2026 bond hearing, but will grant limited habeas relief as to the constitutionality of continued detention.

## IV. **CONCLUSION**

For the reasons set forth above, the Court finds that it lacks jurisdiction to review Judge Carbone's discretionary denial of bond and further finds that Petitioner received a bond hearing that comported with the requirements of due process and fundamental fairness. Within seven (7) days of the accompanying Order, Respondents shall either (1) make an individualized showing, supported by record evidence, demonstrating that Petitioner's continued detention is necessary to serve the Government's regulatory interests, or (2) release Petitioner under reasonable conditions of supervision. If Respondents fail to make the required showing within that period, Petitioner shall be released under reasonable conditions consistent with applicable statutes and regulations.

An appropriate Order follows.

Dated: February 23, 2026

*Karen M. Williams*
**KAREN M. WILLIAMS**
**United States District Judge**